| | |
|---|---|
| Aluma Construction Corp.<br>        Recurrente    - Apelante<br><br>v.<br><br>Autoridad de Acueductos y<br>Alcantarillados<br>        Recurrida    - Apelada<br>_____<br>Cidra Excavation, S.E.<br>        Licitador Agraciado<br><br>v.<br><br>Cherox, Inc.<br>Constructora I. Meléndez, SE<br>Rullá    n Ruiz Group, Inc.<br>Constructora de Aguada, Inc.<br>Bermúdez & Longo, Díaz        - Massó, SE<br>Enersys Eng     i neering Corp.<br>Jafer Constructor Corp.<br>Suárez Engineering Corp.<br>Alfa & Omega Electric, SE<br>        Partes con Interés | Certiorari<br><br>2011 TSPR 132<br><br>182 DPR ____ |

Número del Caso: AC        - 2009 - 48


Fecha: 13 de septiembre de 2011


Tribunal de Apelaciones:

        Región Judicial de Ponce Panel VIII


Juez Ponente:
                Hon. Erik Ramírez Nazario

Abogados de la Parte Peticionaria:

                Lcdo. Luis A. Rivera Cabrera
                Lcdo. Ricardo Arturo Pérez            - Rivera

Abogados de la Parte Recurrida:

                Lcdo. Lemuel Cancel Méndez
                Lcda. Eileen Rivera            - Amador


Materia: Impugnación de Subasta

Este documento constituye un documento oficial del Tribunal Supremo que está     sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aluma Construction Corp.<br>  Recurrente-Apelante<br><br>               v.<br><br>Autoridad de Acueductos y<br>Alcantarillados<br>  Recurrida-Apelada<br>_____<br><br>Cidra Excavation, S.E.<br>  Licitador Agraciado<br><br>               v.<br><br>Cherox, Inc.<br>Constructora I. Meléndez, SE<br>Rullán Ruiz Group, Inc.<br>Constructora de Aguada, Inc.<br>Bermúdez & Longo, Díaz-Massó, SE<br>Enersys Engineering Corp.<br>Jafer Constructor Corp.<br>Suárez Engineering Corp.<br>Alfa & Omega Electric, SE<br>      Partes con Interés | AC-2009-48 |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico a, 13 de septiembre de 2011.

El presente caso nos permite determinar si existe un plazo para que una agencia o entidad apelativa resuelva en los méritos una solicitud de reconsideración de adjudicación de subasta, una vez ésta es acogida dentro del plazo de 10 días que dispone la Sec. 3.19 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988.[1] Por considerar que no existe un plazo determinado en la Ley para que se resuelva dicha solicitud, revocamos.

_____
[1] 3 L.P.R.A. sec. 2169.

**I**

La controversia en el caso de autos está centrada en el aspecto procesal del mismo, por ende, nos limitaremos a exponer los hechos incontrovertidos y pertinentes a dicho aspecto.

El 31 de mayo de 2008 la Autoridad de Acueductos y Alcantarillados de Puerto Rico (A.A.A.) publicó en dos periódicos del país el aviso de subasta 08-SP-034 para el proyecto "Water Supply System & Sanitary Sewer System Aguirre – Montesoria Communities, Salina, PR". Once licitadores sometieron sus propuestas para el referido proyecto, entre los cuales se encontraba Aluma Construction Corp. (ALUMA). El 9 de octubre de 2008 se celebró la apertura de dicha subasta.

Tras varios incidentes característicos del proceso de subasta -como la evaluación de las propuestas sometidas por los licitadores y el análisis del cabal cumplimiento de los requerimientos administrativos- la Junta de Subastas de la A.A.A. (Junta) le recomendó al Director Ejecutivo de dicha corporación pública la adjudicación de la subasta al licitador Cidra Excavation, S.E. (CIDRA). Conforme a ello, el 6 de febrero de 2009 la Junta emitió una carta de adjudicación en la que notificó que la buena pro de la subasta se le otorgó a CIDRA.

Insatisfecha con la referida adjudicación, ALUMA presentó oportunamente una solicitud de reconsideración ante la Junta el 17 de febrero de 2009. ALUMA arguyó que el proceso adjudicativo estuvo plagado de serios errores

evaluativos y que, además, la actuación administrativa fue arbitraria, irrazonable y caprichosa. Asimismo, ALUMA sostuvo que fue el licitador más bajo de la subasta. El 27 de febrero de 2009 la Junta acogió la solicitud de reconsideración presentada por ALUMA para su resolución correspondiente.

Luego de varios meses sin que la Junta tomara una decisión con relación a la reconsideración, el 1 de junio de 2009 ALUMA acudió a la Junta para examinar el expediente administrativo con el propósito de preparar una eventual solicitud de revisión judicial. En dicha ocasión se le notificó a ALUMA que no permitirían acceso al expediente administrativo hasta tanto culminara el proceso interno en torno a la reconsideración. Así, pues, el 4 de junio de 2009 ALUMA presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. Sus argumentos se fundamentaron en una decisión previa del Tribunal de Apelaciones en otro caso de similar controversia para sostener que la A.A.A. tenía un término de 90 días para disponer de la solicitud de reconsideración.[2] Ante la falta de acción en esos 90 días, ALUMA entendió procedente acudir al Tribunal de Apelaciones mediante un recurso de revisión judicial.

El 8 de junio de 2009 la Junta finalmente emitió una resolución sobre la solicitud de reconsideración sometida por ALUMA en la que confirmó la adjudicación de la subasta a CIDRA. En esa resolución la Junta le notificó a ALUMA que

---

[2] Sentencia del Tribunal de Apelaciones de 31 de agosto de 2006, Trans Ad v. Junta de Subasta (KLRA200600560).

de no estar satisfecha con la determinación tenía diez días calendario para recurrir al Tribunal de Apelaciones a través de un recurso de revisión judicial. Al día siguiente, el Tribunal de Apelaciones emitió una Sentencia en el recurso de revisión judicial que ALUMA había presentado unos días antes. En dicha sentencia el tribunal se declaró sin jurisdicción para atender el asunto al sostener que, a base de la Sec. 3.19 de la L.P.A.U.,[3] la A.A.A. tenía sólo diez días para disponer de la reconsideración desde la fecha en que ésta se presentó. Conforme a lo anterior, el foro apelativo intermedio expuso que el término para ir en revisión ante dicho foro culminó el 9 de marzo de 2009.

El 12 de junio de 2009 ALUMA acudió de nuevo ante el Tribunal de Apelaciones mediante un recurso de revisión judicial. En esa ocasión, ALUMA sostuvo nuevamente que una decisión de otro Panel de dicho foro apelativo reconoció que el término para ir en revisión judicial comienza a partir del momento en que una agencia emite un dictamen final y firme resolviendo la reconsideración.[4] Ahora bien, el mismo Panel del Tribunal de Apelaciones que desestimó el primer recurso de ALUMA, emitió una Sentencia el 18 de junio de 2009 para disponer de ese segundo recurso y se declaró nuevamente sin jurisdicción sobre los mismos fundamentos expuestos en la Sentencia previa.

---

[3] 3 L.P.R.A. sec. 2169.

[4] Sentencia del Tribunal de Apelaciones de 20 de noviembre de 2008, Mapfre Life Insurance Co. v. U.P.R. (KLRA200800910).

Inconforme con esa determinación apelativa, ALUMA presentó oportunamente ante este Tribunal un recurso de apelación en el que arguyó que la controversia planteada en el caso ha sido resuelta en el Tribunal de Apelaciones de tres formas distintas. Además, su planteamiento principal es el siguiente:

> ERRÓ el Honorable Tribunal de Apelaciones al dictaminar que en los casos de subastas gubernamentales, el término para *acoger* y *resolver* en los méritos la solicitud de reconsideración es de diez (10) días a partir de su presentación de conformidad con las Secciones 3.1 y 3.19 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988 (L.P.A.U.), 3 L.P.R.A. §§ 2151 y 2169, a pesar de que la Sección 3.19 de la L.P.A.U. no provee término alguno para la *resolución* de una solicitud de reconsideración una vez ésta sea *acogida* por la agencia o entidad administrativa dentro del término de diez (10) días a partir de su oportuna presentación.

El 30 de junio de 2009 acogimos el recurso como uno de *certiorari* y expedimos. Así, con el beneficio de las comparecencias de las partes, procedemos a resolver el recurso.

## II

Las subastas son invitaciones que efectúa una entidad para que se presenten ofertas para la realización de obras o adquisicion de bienes y servicios.[5] Este procedimiento es el que mayormente se utiliza en el Gobierno. Las subastas son esenciales para la buena administración pública, ya que así el Gobierno puede llevar a cabo sus funciones como comprador de una forma eficiente, honesta y correcta para

---

[5] <u>Perfect Cleaning v. Cardiovascular</u>, 172 D.P.R. 139, 143 (2007).

proteger los intereses y dinero del pueblo.[6] Es por esta razón que el Gobierno realiza subastas para la adquisición de los materiales y servicios que necesita o para la construcción de obras públicas.

Hemos sostenido consistentemente que "las subastas gubernamentales buscan proteger los intereses del pueblo, procurando conseguir los precios más bajos posibles; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia; el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento".[7] Para lograr los propósitos antedichos es que el proceso de subasta gubernamental se debe caracterizar por fomentar la competencia libre y transparente entre el mayor número de licitadores posibles y así, pues, adjudicar la subasta al mejor postor.[8] Además, es importante tener presente que todo el proceso de subastas, el cual consiste de varias etapas,[9] debe estar supeditado al interés público de proteger los fondos del Pueblo de Puerto Rico.[10]

---

[6] Cordero Vélez v. Mun. Guánica, 170 D.P.R. 237, 245 (2007).

[7] Accumail P.R. v. Junta Sub. A.A.A., 170 D.P.R. 821, 827 (2007); Perfect Cleaning v. Cardiovascular, supra, págs. 143-144.

[8] Accumail P.R. v. Junta Sub. A.A.A., supra; Cordero Vélez v. Mun. Guánica, supra; Empresas Toledo v. Junta de Subastas, 168 D.P.R. 771 (2006).

[9] El elemento formal del proceso de subasta consta de varias etapas, en términos generales estos son:

> …la preparación por parte del ente gubernamental de los pliegos de condiciones y especificaciones, el aviso de subasta al público, el recibo y posterior apertura pública de las propuestas selladas recibidas, la evaluación y el estudio de las mismas por un comité evaluador, la recomendación del comité respecto a la adjudicación de la buena pro, la adjudicación de ésta y la notificación a todos los licitadores. Una vez sometidos los pliegos de licitación y abiertos éstos, los mismos no admiten modificaciones. La apertura de los pliegos de licitación

Ahora bien, no existe una ley que regule los procedimientos de subasta con uniformidad. Precisamente, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.) sólo estableció que dichos procedimientos –con excepción de las etapas de revisión judicial y reconsideración– son de naturaleza informal, y delegó a las agencias la facultad para aprobar los reglamentos necesarios para establecer sus normas y condiciones.[11]

Con relación a la solicitud de reconsideración dentro de un procedimiento de adjudicación de subasta, la Sec. 3.19 de la L.P.A.U., 3 L.P.R.A. sec. 2169 (Sec. 3.19 de la L.P.A.U.) dispone que,

> la parte adversamente afectada por una decisión podrá, dentro del término de diez (10) días a partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia o la entidad apelativa de subastas, de existir una en la agencia, según sea el caso. La agencia o la entidad deberá considerarla dentro de los diez (10) días de haberse presentado. **Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción.** Si la agencia o la entidad apelativa dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse

---

se efectúa públicamente ante todos los licitadores. No hay cabida en este proceso para la negociación de los términos sometidos entre agencia y licitador. R & B Power v. E.L.A., 170 D.P.R. 606, 621 (2007).

[10] Cordero Vélez v. Mun. Guánica, *supra*.

[11] 3 L.P.R.A. secs. 2151, 2169 y 2172. Véanse, Trans Ad. De P.R. v. Junta de Subastas, 174 D.P.R. 56, 66 (2008); Perfect Cleaning v. Cardiovascular, *supra*, pág. 757.

presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial. (Énfasis suplido.)

La sección antedicha señala claramente que el término para presentar una moción de reconsideración es de diez días a partir de la adjudicación de la subasta. Una vez presentada, la agencia o la entidad apelativa tendrá un término de diez días para considerarla. De no tomar alguna acción en dicho término se entenderá que la moción ha sido rechazada de plano. A partir de la fecha en que se ha entendido el rechazo de plano comenzará el término para la revisión judicial.

Por otro lado, la sección transcrita expresa que si en el término de diez días para considerar la moción de reconsideración la agencia tomare alguna consideración, el término para instar el recurso de revisión judicial comenzará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción. Es decir, en la Sec. 3.19 de la L.P.A.U. el legislador aseguró que el término para solicitar la reconsideración, la fecha para acoger la misma y el plazo para solicitar revisión judicial quedasen fijados por ley, de forma que no estén sujetos a la discreción administrativa.[12]

Sin embargo, es evidente que la Sec. 3.19 de la L.P.A.U. no establece un plazo para que la agencia o entidad apelativa resuelva en los méritos la moción de

---

[12] Cotto v. Depto. de Educación, 138 D.P.R. 658, 663 (1995).

reconsideración oportunamente acogida. Dicha sección sólo menciona que una vez acogida, el término para instar un recurso de revisión judicial empezará a contarse a partir de la fecha en que se archiva en autos una copia de la **decisión de la agencia o la entidad apelativa resolviendo la moción.**

Lo anterior debe examinarse en conjunto con lo dispuesto en la Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172 (Sec. 4.2 de la L.P.A.U.) la cual expone que,

> [e]n los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de diez (10) días de haber transcurrido el plazo dispuesto por la sec. 2169 de este título. La mera presentación de un recurso de revisión judicial al amparo de esta sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada.

Según la Sec. 4.2 de la L.P.A.U. el término para ir en revisión judicial al Tribunal de Apelaciones en los casos de impugnación de subasta es de 10 días. Dicho término comenzará a partir del archivo en autos de la copia de la notificación de la **orden o resolución final de la agencia o entidad apelativa; o después de transcurrido el término de diez días que dispone la Sec. 3.19 de la L.P.A.U con relación a una solicitud de reconsideración.** Así, al examinar ambas secciones de la L.P.A.U. en conjunto, podemos sostener que el término de diez días para presentar

un recurso de revisión judicial ante el Tribunal de Apelaciones puede comenzar en dos espacios diferentes.

Como primer escenario está aquel que tiene su génesis en la fecha en que se rechaza una solicitud de reconsideración. Dicho rechazo podría darse expresamente mediante un dictamen dentro del término de diez días que tiene la agencia o entidad apelativa para considerarla o, en el caso de que culmine el término de diez días sin que se haya tomado alguna acción, momento en el que se entenderá que se rechazó de plano. A partir de cualquiera de las dos fechas, según sea el caso, comenzará el término para acudir al Tribunal de Apelaciones en revisión judicial.

Por su parte, el segundo escenario se refiere a las situaciones en las que la agencia o entidad apelativa emitan una orden o resolución final. Lo medular en ello es que la orden o resolución dictada sea final. De esa forma, estamos ante un escenario en el que la agencia o entidad apelativa acogió oportunamente la solicitud de reconsideración y la resolvió en los méritos. A partir del archivo en autos de la copia de la notificación de dicha orden o resolución final comienza a contarse el término de diez días para ir en revisión judicial.

Ahora bien, en lo pertinente a esta controversia, ¿existe algún plazo para que una agencia o entidad apelativa resuelva en los méritos una solicitud de reconsideración de adjudicación de subasta, una vez ésta es

acogida dentro del plazo de diez días que dispone la Sec. 3.19 de la L.P.A.U.? Contestamos en la negativa.

Como ya hemos visto ni la Sec. 3.19 ni la Sec. 4.2 de la L.P.A.U. establecen un plazo para que una agencia o entidad apelativa resuelva una moción de reconsideración acogida. Ciertamente, la única sección que hace mención de un plazo en la disposición de una solicitud de reconsideración es la Sec. 3.15 de la L.P.A.U, 3 L.P.R.A. sec. 2165 (Sec. 3.15 de la L.P.A.U.). Esa sección es la que dispone todo lo relacionado a la reconsideración de órdenes o resoluciones finales emitidas por las agencias en los procedimientos adjudicativos formales. En ese sentido, señala que si una agencia acoge la moción de reconsideración pero no la resuelve dentro de los 90 días desde que ésta fue presentada, perderá jurisdicción sobre la misma. El plazo para solicitar revisión judicial comenzará a partir de la expiración de dicho término de 90 días salvo que la agencia, por justa causa y dentro de esos 90 días, prorrogue el término para resolver por un periodo que no será mayor de 30 días adicionales. No obstante, claramente las disposiciones anteriores son de aplicación sólo a los procedimientos adjudicativos formales y no a los informales como las subastas.

Precisamente, la Sec. 3.1 de la L.P.A.U. expresa que la reconsideración de las decisiones emitidas en los procedimientos adjudicativos formales se regirá por lo

dispuesto en la Sec. 3.15 de la L.P.A.U.[13] En cambio, la propia Sec. 3.1 dispone que **las reconsideraciones relativas a subastas sólo se regirán por lo dispuesto en la Sec. 3.19 de la L.P.A.U.**[14] Por consiguiente, el legislador expresamente denegó la extensión del término de 90 días a los procesos de subasta.

Como ya expusimos, en la L.P.A.U. el legislador pretendió simplificar los procedimientos adjudicativos de subasta y sólo consideró como procedimientos formales la reconsideración y la revisión judicial. De esa forma, se obviaron los requisitos del Capítulo III de la L.P.A.U. en todos los procesos anteriores a la reconsideración y, así, se limitaron los procesos formales a la propia moción de reconsideración. Asimismo, se dejó a las agencias "disponer por reglamento todo lo relativo al proceso de subasta, así como al procedimiento de reconsideración".[15]

Evidentemente la L.P.A.U. no establece un plazo para que una agencia o entidad apelativa resuelva en los méritos una solicitud de adjudicación de subasta acogida oportunamente. Las agencias gozan de una amplia discreción para atender la reconsideración acogida. Por ende, las agencias pueden reglamentar y establecer un término para ello, lo cual es cónsono con la informalidad que permea los procedimientos de subastas.

---

[13] 3 L.P.R.A. sec. 2151.

[14] Íd.

[15] Véase Informe del Senado sobre el P. de la C. 232 de 25 de junio de 1989, págs. 5-6, 1era Sesión Ordinaria, 11ma Asamblea Legislativa.

Ahora bien, es importante señalar que cuando una agencia acoge una solicitud de reconsideración, la prudencia aconseja que se paralice el procedimiento de adjudicación de la subasta y no se otorgue un contrato. Es evidente que cuando se acoge oportunamente una solicitud de reconsideración la adjudicación deja de ser final, ya que la agencia está evaluando su propia adjudicación. Por consiguiente, hasta que la agencia resuelva la solicitud de reconsideración oportunamente acogida, los licitadores no podrán ir en revisión judicial. Ello porque la resolución de la agencia no es final.[16] Es decir, el tiempo que tarde una agencia en resolver no operará contra aquellos licitadores que esperan para acudir en revisión judicial. De esa forma, preservamos el derecho a la revisión judicial, evitamos que la controversia se convierta en académica y sobretodo, protegemos el interés público que enmarca el procedimiento de subasta.

## III

En el presente caso, el 17 de febrero de 2009 ALUMA presentó oportunamente la solicitud de reconsideración de la adjudicación de subasta ante la Junta. El 27 de febrero del mismo año, décimo y último día del plazo en ley para acoger la referida solicitud, la Junta finalmente la acogió. Posteriormente, el 4 de junio de 2009 ALUMA presentó un recurso de revisión judicial en el Tribunal de Apelaciones ante la ausencia de una determinación final de la Junta con relación a la solicitud de reconsideración. No

---

[16] Véase Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172.

obstante, el 8 de junio de 2009 la Junta emitió un dictamen sobre la reconsideración en cuestión en el que confirmó la adjudicación de la subasta.

El 9 de junio de 2009 el Tribunal de Apelaciones emitió una Sentencia en la que se declaró sin jurisdicción para atender el asunto. Sostuvo que a base de la Sec. 3.19 de la L.P.A.U. la Junta tenía sólo diez días para acoger y resolver en los méritos la solicitud de reconsideración presentada por ALUMA. Posteriormente, ALUMA presentó un nuevo recurso de revisión judicial en el Tribunal de Apelaciones el 12 de junio de 2009. Esa vez ALUMA sostuvo que ante la decisión final que tomó la Junta el 8 de junio de 2009 el término de diez días para ir en revisión judicial comenzaba a partir del archivo en autos de una copia de la notificación de la decisión de la Junta. El Tribunal de Apelaciones emitió una Sentencia el 18 de junio de 2009 en la que nuevamente se declaró sin jurisdicción sobre los mismos fundamentos de la primera Sentencia.

De entrada es preciso señalar que los fundamentos que utiliza el foro apelativo intermedio para su dictamen son desacertados. Como ya hemos visto, la Sec. 3.19 de la L.P.A.U. dispone un término de diez días a partir de la adjudicación de la subasta para que se presente una solicitud de reconsideración. Una vez se presenta dicha solicitud, la agencia o entidad apelativa tiene un nuevo término de diez días para acogerla o rechazarla. No obstante, la sección antedicha no dispone de un término determinado para que la agencia o entidad apelativa

resuelva en los méritos la solicitud de reconsideración acogida. Por ende, determinar que el término de diez días que dispone la Sec. 3.19 de la L.P.A.U. para acoger la solicitud de reconsideración abarca también tener que resolverla en el mismo plazo, implica la aplicación de un término que claramente la L.P.A.U no contempla.

Al igual que el Tribunal de Apelaciones reconocemos que los términos contemplados por la L.P.A.U. sobre los procesos de subastas son más cortos y promueven la celeridad. Sin embargo, consideramos que lo anterior no es una razón para que se incluya dentro del término que tiene una agencia o entidad apelativa para acoger una solicitud de reconsideración, su eventual resolución en los méritos.

En primer lugar, lo anterior no se desprende de la letra de la ley. En segundo lugar, sostener lo contrario podría acarrear el absurdo de que una agencia o entidad apelativa acoja una solicitud de reconsideración el décimo día y automáticamente tenga que tomar una determinación en los méritos ese mismo día. No podemos perder de perspectiva que cuando la parte adversamente afectada por una adjudicación de subasta presenta una solicitud de reconsideración, lo menos que espera de la agencia o entidad apelativa es que su reclamo sea atendido con seriedad, responsabilidad y detenimiento. Asimismo, debemos ser conscientes que los procesos de subastas suelen contener asuntos técnicos y complejos que ameritan una consideración administrativa razonable. Ello en unión con la obligación ministerial de las agencias y entidades

administrativas de siempre velar del buen uso de los fondos públicos. De esa forma, la celeridad administrativa en la resolución de una reconsideración debidamente acogida, dependerá de la complejidad de los asuntos envueltos en cada caso.

Por otro lado, ALUMA trae a nuestra consideración los fundamentos que se utilizan en otro dictamen del Tribunal de Apelaciones de controversia similar para sostener que el término de 90 días expuesto en la Sec. 3.15 de la L.P.A.U. puede extenderse por analogía a las reconsideraciones de adjudicaciones de subastas.[17] No obstante, consideramos que tal extensión por analogía es improcedente ya que es un término que el legislador **clara y expresamente** excluyó de su aplicación a dichos procesos de subasta.

Finalmente, en el presente caso la Junta resolvió en los méritos la solicitud de reconsideración de ALUMA el 9 de junio de 2009, notificada ese mismo día. A partir de esa fecha comenzó el plazo de diez días para ir en revisión judicial. Es decir, ALUMA tenía hasta el 19 de junio de 2009 para presentar su recurso de revisión judicial al Tribunal de Apelaciones. ALUMA presentó su recurso el 12 de junio de 2009. No obstante, el Tribunal de Apelaciones desestimó el recurso. Sostuvo que no tenía jurisdicción para atenderlo porque entendió que la Junta tenía que acoger y resolver la solicitud de reconsideración de ALUMA

---

[17] Sentencia del Tribunal de Apelaciones de 31 de agosto de 2006, <u>Trans Ad v. Junta de Subasta</u> (KLRA200600560).

dentro del término de 10 días expuesto en la Sec. 3.19 de la L.P.A.U. Tal proceder es incorrecto.

En vista de que las agencias o entidades apelativas no cuentan con un término determinado para resolver en los méritos las solicitudes de reconsideración de adjudicación de subasta acogidas oportunamente, consideramos que ALUMA presentó dentro del plazo correspondiente su solicitud de revisión judicial. Así, pues, creemos que al resolver como hemos resuelto en el caso de autos, sin ir más allá, atendemos un vacío legislativo de manera necesaria y suficiente. En estas circunstancias, imponerle judicialmente un término a las agencias administrativas constituiría un acto de legislación judicial o indebida intromisión en los deberes y poderes de la Rama Legislativa.

Por otro lado, no debemos pasar por alto que el silencio del legislador pudiera no deberse a una inadvertencia. Me explico. En primer lugar y contrario a los procedimientos adjudicativos formales, en el proceso de adjudicación de subastas, antes de la otorgación del contrato, no hay intereses propietarios reconocidos a las partes más allá de los intereses que se le reconocen al ente administrativo. Tan es así, que hemos reconocido reiteradamente que una agencia tiene el derecho de revocar una adjudicación de una subasta antes de que se formalice el contrato.[18]

---

[18] Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 248 (2007); Justiniano v. E.L.A., 100 D.P.R. 334, 340 (1971).

En segundo lugar, debemos tener presente que los procesos de subastas en las agencias públicas pueden contener asuntos altamente técnicos o de alta participación de licitadores. Esto provoca que en ocasiones una agencia opte por acoger más de una moción de reconsideración, para resolver puntos diversos y complicados. En vista de lo anterior, entendemos que son las propias agencias las que se encuentran en mejor posición para establecer un término reglamentario –si es que lo entendieran necesario- en la resolución de una reconsideración que ha sido acogida.

## IV

En armonía con lo antes señalado, revocamos la Sentencia del Tribunal de Apelaciones en la que se declaró sin jurisdicción, y devolvemos el caso a dicho tribunal para que el mismo sea evaluado en los méritos.

Se dictará Sentencia de conformidad.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aluma Construction Corp.
  Recurrente-Apelante

v.

Autoridad de Acueductos y
Alcantarillados
  Recurrida-Apelada
_____

Cidra Excavation, S.E.
  Licitador Agraciado                    AC-2009-48

v.

Cherox, Inc.
Constructora I. Meléndez, SE
Rullán Ruiz Group, Inc.
Constructora de Aguada, Inc.
Bermúdez & Longo, Díaz-Massó, SE
Enersys Engineering Corp.
Jafer Constructor Corp.
Suárez Engineering Corp.
Alfa & Omega Electric, SE
      Partes con Interés

SENTENCIA

San Juan, Puerto Rico a, 13 de septiembre de 2011.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones en la que se declaró sin jurisdicción, y se devuelve el caso a dicho tribunal para que el mismo sea evaluado en los méritos.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión disidente.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aluma Construction Corp.<br><br> Parte Recurrente-Apelante<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados de Puerto Rico<br><br> Parte Recurrida-Apelada<br>Cidra Excavation, S.E.<br><br> Licitador Agraciado<br><br>Cherox, Inc., Constructora I. Meléndez,S.E., Rullán Ruiz Group, Inc., Constructora de Aguada, Inc., Bermúdez & Longo, Díaz-Massó, S.E.; Enersys Engineering Corp., Jafer Constructor Corp., Suárez Engineering Corp., Alfa & Omega Electric, S.E. | AC-2009-0048 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 13 de septiembre de 2011

Disiento de la determinación del Tribunal de no especificar un término para que las agencias resuelvan mociones de reconsideración de adjudicación de subastas oportunamente acogidas. Ello hace que el fallo dictado por el Tribunal imparta una Justicia a medias. No puedo coincidir con una determinación cuyo dictamen es incompleto y que no resuelve, verdaderamente, la problemática que generó el caso ante nuestra consideración. Respetuosamente, estimo que con este proceder claudicamos a nuestra obligación de procurar un ordenamiento

basado en derecho (*rule of law*) que resuelve las controversias meritorias que se nos presentan.  Me explico.

I

La naturaleza de la controversia que examinamos hace innecesario reproducir los hechos que ya han sido presentados en la Opinión del Tribunal.  Basta apuntar que la peticionaria, Aluma Construction Corp., presentó oportunamente una reconsideración ante la Junta de Subastas de la Autoridad de Acueductos y Alcantarillados (A.A.A.) tras no resultar favorecida en la adjudicación de la licitación en la cual participó.  A pesar que diez (10) días después la Junta de Subastas acogió la reconsideración, transcurrieron varios meses sin que dicha entidad emitiera una determinación sobre ésta. Ante tal escenario, y ya pasados noventa y siente (97) días desde haber sido acogida la moción de reconsideración, la peticionaria presentó un recurso de revisión judicial ante el Tribunal de Apelaciones.  Dicho foro se declaró sin jurisdicción.

No obstante, mientras el recurso estaba ante la consideración del foro apelativo intermedio, la Junta de Subastas emitió una resolución declarando no ha lugar la moción de reconsideración.  Ello ocurrió ciento un (101) días después de haber acogido la referida reconsideración y ciento once (111) días luego haber sido presentada.  Inconforme aún, la peticionaria presentó un segundo recurso ante el Tribunal de Apelaciones cuatro (4) días después de la determinación de la Junta de Subastas.  Nuevamente, el foro apelativo intermedio se

declaró sin jurisdicción. Expuso que el ente administrativo tenía tan sólo diez (10) días para disponer de la moción de reconsideración a partir de la fecha en que le fue presentada. Por lo tanto, concluyó que el término para acudir en revisión judicial de la subasta había vencido hace ya varios meses.

Acude entonces la peticionaria ante este Foro y solicita revoquemos la determinación del Tribunal de Apelaciones. Su recurso nos presenta la interrogante respecto a qué término tienen las agencias cobijadas por la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2101 *et seq.*, para resolver una moción de reconsideración acogida por la agencia oportunamente. Ello dentro del marco de la adjudicación de subastas. Veamos entonces las disposiciones legales pertinentes.

II

La L.P.A.U. fue promulgada con el fin de establecer sistemas de gobernanza flexibles y ágiles a través de gran parte de las instituciones del Estado Libre Asociado de Puerto Rico, sin obviar la protección de ciertos derechos mínimos que deben garantizarse a la ciudadanía. Dentro de la informalidad que caracteriza todos los procesos dispuestos en esta legislación -frente a la formalidad de la adjudicación judicial o la regulación legislativa- el propio estatuto reconoce procedimientos administrativos formales e informales.

Como sabemos, parte de los procedimientos formales que el legislador estableció y uniformó en la L.P.A.U. son los procedimientos de reglamentación, los adjudicativos y la

revisión judicial. 3 L.P.R.A. secs. 2121-77. Fuera quedaron la concesión de becas, préstamos o premios, y la adjudicación de subastas, entre otros procedimientos catalogados como informales. 3 L.P.R.A. sec. 2151(a). Sin embargo, en 1989, se enmendó la ley para incluir disposiciones específicas que uniformaran la reconsideración y la revisión judicial de la adjudicación de subastas. *Véase*, Ley Núm. 43 de 5 de agosto de 1989. Fue entonces cuando se integró la sección 3.19 de la L.P.A.U., 3 L.P.R.A. sec. 2169, la cual lee:

> **Los procedimientos de adjudicación de subastas serán procedimientos informales; su reglamentación y términos serán establecidos por las agencias.** La parte adversamente afectada por una decisión podrá, dentro del término de diez (10) días a partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia o la entidad apelativa de subastas, de existir una en la agencia, según sea el caso. La agencia o la entidad deberá considerarla dentro de los diez (10) días de haberse presentado. Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción. Si la agencia o la entidad apelativa dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que esta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial. (Énfasis suplido).

Esta sección otorgó formalidad a la reconsideración de la adjudicación de subastas, proveyendo términos breves para la presentación de la moción y la determinación de la agencia de acoger o no la solicitud de reconsideración presentada. *Véase*, Informe de la Comisión de lo Jurídico del Senado, P. de la C. 232, 25 de junio de 1989, 11^{ma} Asamblea Legislativa, 1^{ra} Sesión Ordinaria, pág. 6, citado en *Cotto v. Depto. de Educación*, 138

D.P.R. 658, 663 (1995). Esta sección, sin embargo, no estableció un término dentro del cual el foro administrativo debe resolver la solicitud de reconsideración presentada y acogida. Por otro lado, y no obstante lo expresado, la sección 3.19 dejó claro que -a excepción de la reconsideración y la revisión judicial- las subastas son procedimientos informales. *Id.*

Ahora bien, podemos apreciar que la primera oración de la sección 3.19 creó un mandato claro dirigido a todas las agencias que celebran licitaciones para que establezcan reglamentos con **los términos que regirán la adjudicación de sus subastas.** *Véase además*, Informe de la Comisión de lo Jurídico del Senado, *supra*, pág. 5 (La sección 3.19 "instruye a las agencias []a aprobar reglamentos para el establecimiento[] de las normas, condiciones, especificaciones y términos de las subastas".) Parece razonable concluir, que el término para resolver una moción de reconsideración de adjudicación de subasta que fue presentada y acogida por la agencia, es un término que debe constar en la reglamentación que apruebe una agencia sobre sus procesos de subasta. Dicho de otra manera, las agencias autorizadas a celebrar licitaciones están obligadas a disponer mediante reglamento las condiciones y el procedimiento que regirán la adjudicación de sus subastas`; lo que incluye, sin dudas, lo relativo al término para atender la reconsideración de la adjudicación.

Los detalles de la adjudicación de subastas que no han sido previamente regulados por la ley, quedan entonces bajo la

discreción de cada una de las agencias. Ahora bien, debemos aclarar que las agencias gozan de discreción para formular y diseñar los pormenores de la adjudicación de la subasta, no para decidir si los adoptan o no. La Asamblea Legislativa ya decidió que los entes administrativos crearán reglamentos que establezcan los términos y condiciones de las subastas, de manera que sólo resta determinar cuáles serán dichos términos y condiciones. *Véase*, Informe de la Comisión de lo Jurídico del Senado, *supra*, pág. 5.

La L.P.A.U. ha dejado en manos de las agencias el término que éstas tendrán disponible para resolver una moción de reconsideración de una adjudicación de subasta que fuera acogida previamente. Éste debe estar claramente descrito en la reglamentación pertinente de la agencia ya que incide sobre la disponibilidad del remedio de revisión judicial. *Véanse*, 3 L.P.R.A. secs. 2169, 2172. Siendo así, no puede quedar al arbitrio de las agencias, mediante una adjudicación de caso a caso, determinar cuándo las partes afectadas por una decisión administrativa podrán acudir a los tribunales en busca de auxilio. Se trata al fin de cuentas del debido proceso de ley. *Véanse*, *Asoc. Fcias Com. v. Depto. de Salud*, 156 D.P.R. 105, 131 (2002), citando a K.C. Davis & R.J. Pierce, Jr., *Administrative Law Treatise*, 3ra ed., Nueva York, Aspen Law & Business, Supl. 2000, Sec. 6.7 ("cuando las agencias promulgan reglamentos, se promueven, en términos generales, la justicia y la igualdad"); *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 499 (1982), citando a *Pennsylvania St. Board of Phy. v. Cohen*, 292

A2d 277, 282 (1972) ("Como se sabe, el ejercicio de poderes administrativos a base de consideraciones caso por caso, no a base de una ley o de un reglamento, adolece del defecto constitucional de ambigüedad (*vagueness*).".

Por ello, estimo que este Tribunal debe resolver que la L.P.A.U. ordena que las agencias dispongan mediante reglamento los términos y condiciones de la adjudicación de subastas, incluyendo cuánto tiempo tendrá la agencia para tomar una determinación que resuelva en los méritos una moción de reconsideración acogida oportunamente. Pasado dicho término sin que la agencia emita una determinación resolviendo la reconsideración, se deberá entender denegada y comenzará entonces a transcurrir el término para acudir en revisión judicial.

Al negarse a tomar esta determinación, la respuesta que ofrece este Tribunal es claramente insuficiente. Con su silencio, el Tribunal ratifica tácitamente las malas prácticas administrativas que sólo pueden producir desavenencias e injusticias. También da al traste con la política pública que inspiró la aprobación de la L.P.A.U., a los efectos de que "los procedimientos administrativos se efectúen en forma rápida, justa y económica y que **aseguren una solución equitativa** en los casos bajo la consideración de la agencia". 3 L.P.R.A. sec. 2101 (Énfasis suplido). El Tribunal debió hacer efectivo el llamado de la sección 3.19 para que las agencias regulen los pormenores de la adjudicación de las subastas de forma que se

mantenga la discreción de las agencias dentro de los límites de la arbitrariedad.

B

Como apuntamos antes, cada agencia debe disponer en su reglamento sobre adjudicación de subastas cuánto tiempo tendrá para resolver una moción de reconsideración una vez ésta es acogida. En este aspecto, es la agencia quien mejor puede determinar cuál es el término ideal para que la entidad revise la adjudicación original, los nuevos argumentos de las partes, y emita posteriormente su dictamen final. No obstante, la selección de este término por la agencia debe realizarse dentro de los límites que representan el diseño y espíritu de la L.P.A.U.

Al respecto, la L.P.A.U. brinda a las agencias noventa (90) días para resolver una moción de reconsideración, a partir de su presentación, en los procedimientos adjudicativos formales. 3 L.P.R.A. sec. 2165. Este término abona a que "los procedimientos administrativos se efectúen en forma rápida, justa y económica", lo cual es una de las aspiraciones principales de la L.P.A.U. 3 L.P.R.A. sec. 2101. Siendo dicho término adecuado para la reconsideración de una adjudicación formal, es forzoso concluir que la reconsideración de un procedimiento informal como las subastas no requiere un término mayor. No tiene sentido que la reconsideración de un procedimiento informal requiera más tiempo que la reconsideración de uno formal plagado de garantías típicas de los procedimientos cuasi-judiciales. Por ello considero que

las agencias -en el ejercicio de su deber de regular la adjudicación de las subastas- están impedidas de adoptar un término mayor a noventa (90) días para resolver una moción de reconsideración de adjudicación de subasta, a partir de su presentación.

No obstante, ya que son muchas las agencias que actualmente no proveen este término en sus reglamentos, y en miras de evitar que el vacío jurídico ocasione lesiones a las partes involucradas y a la mejor administración de los recursos del Estado, es necesario que concluyamos que mientras las agencias dan cumplimiento al mandato legislativo de regular los procedimientos de subastas, específicamente el término dentro del cual la agencia deberá resolver una reconsideración acogida, tendrán que resolverla dentro de noventa (90) días de haber sido presentada. Para ello, tomamos como referencia el término de noventa (90) días provisto por la sección 3.15 para la reconsideración de procedimientos adjudicativos. 3 L.P.R.A. sec. 2165. A pesar de que esta sección no aplica directamente a las subastas, nada impide que ante la omisión reglamentaria por parte de las agencias, utilicemos este término dispuesto por ley, para así proveer claridad y orden al proceso de adjudicación de subastas. Después de todo, como vimos, tanto la reconsideración de los procedimientos adjudicativos como la reconsideración de las adjudicaciones de subastas, son procedimientos formales regulados parcialmente en la L.P.A.U.

No se trata que el término de noventa (90) días sea siempre el más conveniente -ello debe ser determinado por cada

agencia- sino que es necesario proveerlo como medida transitoria para evitar los menoscabos de la incertidumbre.[19] De lo contrario, las agencias podrían actuar arbitrariamente al no regular sus procedimientos y abusar de su discreción al dejar en el limbo a los licitadores que han presentado sus posturas sobre la reconsideración.

No considero razonable la solución que propicia la mayoría. La decisión mayoritaria propone que las agencias pueden posponer indefinidamente la consideración de la solicitud de reconsideración, al punto de que logren detener el proceso de revisión judicial mientras las obras subastadas no estarían paralizadas. Ello derrota el propósito de la LPAU de permitir una revisión judicial expedita cuando se trata de un proceso informal. Lo adoptado por la mayoría permite que la agencia torne académico un cuestionamiento sobre la adjudicación de una subasta y que el proceso de revisión judicial sea meramente ilusorio. Como sabemos, la regulación de los procesos de subastas persigue evitar favoritismo, preferencias, parcialidad y la protección del erario. Siendo ello así, nuestra obligación ministerial es actuar, llenando el vacío existente en garantía de tales principios, hasta tanto las otras ramas de gobierno se expresen.

Con ello no estamos usurpando funciones de las otras Ramas de Gobierno, ni legislando desde el estrado. Todo lo contrario. Si el Tribunal hoy adoptara esta posición estaría interpretando la legislación para el mejor servicio de nuestras

---

[19] Idealmente, el término debería ser menor, por tratarse de un procedimiento informal de subasta.

instituciones gubernamentales, dándoles claridad y seguridad en cuanto a los deberes que les impone la ley. A su vez, evitaríamos además, que las agencias se auto-impongan términos excesivamente amplios para estos procedimientos informales, en perjuicio de los licitadores y el mejor interés público. No sería la primera vez, que ante un vacío reglamentario que perjudica el interés público, cumplamos con nuestro mandato de resolver los casos ante nuestra consideración impartiendo cumplida Justicia.

En varias ocasiones este Foro ha tenido que interpretar el estatuto bajo estudio para alcanzar una solución justa. A veces, incluso, hemos tenido que leer más allá del texto aprobado por la Legislatura para poder garantizar derechos de nuestros ciudadanos y el mejor funcionamiento del andamiaje administrativo. Brevemente, por ejemplo, en *RBR Const., S.E. v. A.C.*, 149 D.P.R. 836 (1999), extendimos a los procedimientos de subastas los principios generales de la sección 3.16 de la L.P.A.U., 3 L.P.R.A. sec. 2166, aplicables a los procedimientos adjudicativos formales. Por otro lado, en *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. 869 (1999), creamos los elementos mínimos que debe contener una notificación de adjudicación de subasta. De forma similar, en *R & B Power v. E.L.A.*, 170 D.P.R. 606 (2007), concluimos que el mecanismo de requerimiento de propuestas utilizado por muchas agencias, está incluido en la referencia a subasta pública de la sección 3.19 de la L.P.A.U., 3 L.P.R.A. sec. 2169.

En todos los casos ya citados, este Tribunal ha decidido asumir su responsabilidad como máximo intérprete de nuestras leyes y ha dispuesto de las controversias para impartir justicia y estabilidad en nuestro sistema de derecho. Sin embargo, hoy la mayoría de sus integrantes se alejan de dicho proceder y se niegan a ejercer cabalmente su cargo. Lamentablemente, si las agencias del Estado no dan un paso al frente y regulan sus procedimientos de subastas como exponemos, el resultado de la Opinión del Tribunal, veremos, será el reino del desorden y la arbitrariedad en los procedimientos administrativos de adjudicación de subastas.

Lo cierto es que en el pasado hemos resuelto, reiteradamente, que tenemos facultad inherente para suplir procedimientos cuando no existan o cuando hayan sido fijados inadecuadamente por el estatuto, siempre y cuando lo que determinemos no sea inconsistente con las disposiciones de la ley. *Véanse*, *Rivera v. Adm. Trib.*, 146 D.P.R. 808, 814 (1998); *Urrutia v. AAA*, 103 D.P.R. 643, 651 (1975); *González v. Tribunal Superior*, 75 D.P.R. 585, 619 (1953). De otra parte, el artículo 7 del Código Civil, 31 L.P.R.A. sec. 7 -obviado también por la mayoría- nos ordena a que ante el silencio, obscuridad o insuficiencia de una ley, resolvamos y atendamos el reclamo ante nuestra consideración supliendo esas deficiencias.

Sabiamente, hace 35 años indicamos: "Para adjudicar satisfactoriamente las cuestiones jurídicas que diariamente se plantean ante este Tribunal, **no podemos ceñirnos a un enfoque**

**de infertilidad judicial por temor al pretendido argumento de que ello representa una indebida intromisión en los poderes de las otras ramas de Gobierno."** *Meléndez v. Levitt & Sons of PR,* 104 D.P.R. 797, 808 (1976). Nuestra responsabilidad de propiciar un sistema judicial que solucione casos "de forma ordenada, justa y prontamente, no se satisface a plenitud con trasladar periódicamente el problema al ámbito legislativo [o ejecutivo]; esta área exige un enfoque jurisprudencial dinámico que propenda a lograr de manera balanceada los propósitos constitucionales enunciados". *Id.*

III

El Reglamento 2732 de 31 de marzo de 1980 sobre la adjudicación de subastas de la Autoridad de Acueductos y Alcantarillados, según enmendado, no dispone cuál es el término en el que la agencia debe resolver definitivamente una moción de reconsideración de la adjudicación de una subasta que ha sido acogida por la agencia. Tras no asumir su deber de regular este asunto, en el caso de autos la A.A.A. resolvió la moción de reconsideración de la adjudicación de la subasta ciento once (111) días después de que esta fuera presentada. Ello me lleva a concluir que nada impide que suplamos la laguna existente en el **reglamento de subastas de la Autoridad de Acueductos y Alcantarillados, tal y como lo hemos hecho en el pasado.** *Véanse*, *R & B Power v. E.L.A.*, *supra;* J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publ. JTS, San Juan, 2da ed., 2011, Tomo IV, pág. 1492.

Siendo así, si aplicáramos la norma expuesta anteriormente a los hechos del caso de autos, tendríamos que concluir que la A.A.A. perdió jurisdicción sobre la moción de reconsideración a los noventa (90) días de haber sido presentada. Desde entonces comenzó a transcurrir el término de diez (10) días para la revisión judicial ante el Tribunal de Apelaciones. 3 L.P.R.A. sec. 2172. Igualmente, ya que la peticionaria acudió al foro apelativo intermedio ciento quince (115) días después de haber presentado su moción de reconsideración ante la agencia (es decir, transcurridos los noventa (90) días en los que la agencia podía resolver la moción, los diez (10) días disponibles para la revisión judicial, y quince (15) días adicionales), sería forzoso concluir que para ese entonces ya dicho foro carecía de jurisdicción. A tenor con ello, procedería confirmar la determinación recurrida.

Sin embargo, factores de Justicia nos mueven a proponer las normas hasta aquí esbozadas con carácter prospectivo. La controversia que atendemos no puede resolverse en contra de la parte peticionaria, quien fue proactiva en procurar su remedio ante el foro judicial cuando no existía certeza sobre los términos aplicables al caso de autos.

Por las razones antes expuestas, debo disentir del camino por donde marcha el Tribunal.

Anabelle Rodríguez Rodríguez
Juez Asociada